**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
148 West 24th Street, Eighth Floor
New York, NY 10011
Tel.: (212) 465-1188
Fax: (212) 465-1181
*Attorneys for Plaintiff, FLSA Collective Plaintiffs, and the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JUAN SALAZAR HUERTA, *on behalf of himself, FLSA Collective Plaintiffs, and the Class,*<br><br>Plaintiff,<br><br>v.<br><br>LOG-ON COMPUTER & MAILING SERVICES, INC.,<br><br>Defendant. | Case No.:<br><br>**CLASS AND COLLECTIVE ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

Plaintiff JUAN SALAZAR HUERTA ("Plaintiff"), on behalf of himself and others similarly situated, hereby files this Class and Collective Action Complaint against Defendant LOG-ON COMPUTER& MAILING SERVICES, INC. ("Defendant"), and states as follows:

## INTRODUCTION

1. Plaintiff alleges, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), that he and others similarly situated are entitled to recover from Defendant: (1) unpaid wages, including overtime, due to fixed salary payments without payment for overtime hours, (2) liquidated damages, and (3) attorneys' fees and costs.

2. Plaintiff further alleges, pursuant to the State laws and regulations under the New York Labor Law ("NYLL") and New Jersey State Wage and Hour Law ("NJSWHL"), that he and

1

others similarly situated are entitled to recover from Defendant: (1) unpaid wages, including overtime, due to fixed salary payments without payment for overtime hours, (2) liquidated damages, and (3) attorneys' fees and costs.

3. Plaintiff and others similarly situated are victims of Defendant's scheme to underpay employees. Specifically, Defendant compensated Plaintiff, FLSA Collective Plaintiffs, and Class Members a fixed amount per week regardless of the overtime hours Plaintiff, FLSA Collective Plaintiffs, and Class Members were required to work per week. In doing so, Defendant failed to compensate Plaintiff, FLSA Collective Plaintiffs, and Class Members proper overtime for all hours worked in excess of 40 hours.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this controversy pursuant to 29 U.S.C. § 216(b), 28 U.S.C. §§ 1331, 1337 and 1343, and has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367.

5. Venue is proper in the Southern District pursuant to 28 U.S.C. § 1391 as Defendant are headquartered in this District and, therefore, the events, witnesses, policies, and procedures giving rise to the Complaint emanated from this District.

## PARTIES

6. Plaintiff JUAN SALAZAR HUERTA is a resident of Kings County, New York.

7. Defendant LOG-ON COMPUTER & MAILING SERVICES, INC. is a domestic business corporation duly organized under the laws of the State of New York with its headquarters and address for process of service located at the address of 520 8th Avenue, Floor 14, New York, NY 10018.

8. This Court has personal jurisdiction over Defendant in that they are incorporated in the state of New York or operate their headquarters from the State of New York.

9. Defendant engages in an enterprise whose annual volume of sales made or business done is not less than $500,000, the Defendant are thus employers subject to the jurisdiction of the FLSA.

10. At all relevant times, Defendant was and continues to be an "enterprise engaged…in the production of goods for commerce" within the meaning of the FLSA and the NYLL and any Regulations thereunder.

11. At all relevant times, the work performed by Plaintiff, FLSA Collective Plaintiffs, and Class Members was directly essential to the business operated by Defendant.

12. Plaintiff has fulfilled all conditions precedent to the institution of this action and/or such conditions have been waived.

**FLSA COLLECTION ACTION ALLEGATIONS**

13. Plaintiff brings claims for relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all non-exempt employees, including, but not limited to machine operators, laborers, administrative staff, warehouse workers, among others, employed by Defendant on or after the date that is six (6) years before the filing of the Complaint in this case as defined herein ("FLSA Collective Plaintiffs").

14. At all and relevant times, Plaintiff and FLSA Collective Plaintiffs are and have been similarly situated have had substantial job requirements and pay provisions, and have been subjected to Defendant's decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules all culminating in a willful failure and refusal to pay them their proper wages,

including overtime, due to payments to non-exempt employees at a fixed salary rate without additional compensation for overtime hours.

15. The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to Section 16(b) of the FLSA, 29 U.S.C. § 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from the Defendant. Notice can be provided to FLSA Collective Plaintiffs via first class mail to the last address known to Defendant.

## RULE 23 CLASS ALLEGATIONS

16. Plaintiff brings claim for relief pursuant to Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all non-exempt employees, including but not limited to machine operators, laborers, administrative staff, warehouse workers, among others, employed by Defendant on or after the date that is six (6) years before the filing of the Complaint in this case as defined herein (the "Class Period").

17. All said persons, including Plaintiff, are referred to herein as the "Class" or "Class Members." The Class Members are readily ascertainable. The member and identity of the Class Members are determinable from the records of Defendant. The hours assigned and worked, the positions held, and the rate of pay for each Class Member are also determinable from Defendant's records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendant. Notice can be provided by means permissible under F.R.C.P. 23.

18. The proposed Class is so numerous that a joinder of all members is impracticable and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons are unknown, the facts on which the calculation of that number

are presently within the sole control of Defendant, there is no doubt that there are more than forty members of the Class.

19.     Plaintiff's claims are typical of those claims, which could be alleged by any member of the Class, and the relief is typical of the relief, which would be sought by each member of the Class in separate actions. All the Class Members were subject to the same corporate practices of Defendant, as alleged herein, of failing to pay proper wages, including overtime, due to payments to non-exempt employees at a fixed salary rate without compensation of overtime hours.

20.     Defendant's policies and practices affected all Class Members similarly, and Defendant benefitted from the same type of unfair and/or wrongful acts as to each Class Member. Plaintiff and other Class Members sustained similar losses, injuries and damages arising from the same unlawful policies, practices, and procedures.

21.     Plaintiff is able to fairly and adequately protect the interests of the Class and have no interests antagonistic to the Class. Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented plaintiffs in wage and hour cases.

22.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of the wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without unnecessary duplication of efforts and expense that numerous individual actions engender. Because losses, injuries and damages suffered by each of the individual class members are small in the sense pertinent to a class action analysis, the expense and burden of individual litigation

would make it extremely difficult or impossible for the individual class members are to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources, however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendant and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. The issues to this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

23. Defendant and other employers throughout the state violate the NJSWHL, Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

24. There are questions of law and fact common to the Class which predominate over any questions affecting only individual Class Members, including:

    a. Whether Defendant employed Plaintiff and Class Members within the meaning of the NYLL and NJSWHL;

b. What were and are the policies, practices, programs, procedures, protocols and plans of Defendant regarding the types of work and labor for which Defendant did not pay Plaintiff and Class Members;

c. At what common rate, or rates subject to common methods of calculation, was and are Defendant required to pay Plaintiff and Class Members for their work;

d. Whether Plaintiff and Class Members are non-exempt workers being paid a fixed salary with no additional compensation for overtime hours worked;

e. Whether Defendant properly notified Plaintiff and Class Members of their fixed rate of pay and the hours of work that their fixed rate of pay was intended to cover;

f. Whether Defendant paid Plaintiff and Class Members proper wages for all hours worked, including overtime hours;

g. Whether Defendant provided wage and hour notices to Plaintiff and Class Members, at the date of hiring and annually, per requirements of the NYLL and NJSWHL; and

h. Whether Defendant provided proper wage statements to Plaintiff and Class Members per requirements of the NYLL and NJSWHL.

## STATEMENT OF FACTS

**Wage and Hour Allegations:**

25. In or around 1995, Plaintiff was hired by Defendant to work as a machine operator for printing/mailing machines at Defendant's warehouse located at 629 Grove Street, Jersey City, NJ 07310. Plaintiff's employment relationship continued with Defendant until January 2, 2024, when he was terminated.

26. In addition to the New Jersey warehouse where Plaintiff worked, Defendant operated a second warehouse in New York City at the same address as their New York headquarters: 520 8th Avenue, Floor 14, New York, NY 10018. The policies, procedures, and practices employed for the workers of the New Jersey warehouse and the New York warehouse were both set by Defendants' management

27. From the start of his employment until November 2023, Plaintiff was scheduled to work five (5) days per week, Monday through Friday, from 10:00 a.m. until 6:00 p.m. for a total of 40 hours per week. From November 2023 until his termination, Plaintiff was scheduled to work five days a week, Monday through Friday, from 9:00 a.m. until 6:30 p.m. for a total of 47.5 hours per week. Throughout his employment, Plaintiff worked his scheduled hours plus hours in addition to those scheduled hours.

28. Throughout Plaintiff's employment, Defendant required Plaintiff to work an additional 45 minutes after the end of his scheduled shift every day. As a result, Plaintiff worked an 3.75 hours every week beyond his schedule. Additionally, from the start of his employment until the end, Plaintiff was required by Defendant to work an 8-hour shift on Saturday at least once a month. As a result of this additional shift each month, Plaintiff worked an average of 2 hours beyond his schedule each week. In total, on a weekly basis, Plaintiff worked an average of 5.75 hours beyond his schedule. For the period until November 2023, Plaintiff worked an average of 45.75 hours each week. For the period from November 2023 until his termination, Plaintiff worked an average of 53.25 hours each week.

29. Despite working significant overtime, Plaintiff was compensated at a fixed salary rate with no additional compensation for overtime hours of work. From the start of his employment

to his termination, Plaintiff was paid at a fixed rate of $1,050 per week regardless of overtime hours worked. FLSA Collective Plaintiffs and Class Members were paid at a similar fixed salary.

30. FLSA Collective Plaintiffs and Class Members had similar schedules, worked similar overtime hours, were similarly non-exempt, and similarly received no additional compensation for overtime hours of work.

31. From the start of his employment until November 2023, Defendant's improper fixed salary payments to Plaintiff resulted in a failure to compensate 5.75 hours of overtime for each week of work. Further, from November 2023 until his termination, Defendant improperly failed to compensate Plaintiff for 13.25 hours of overtime for each week of work.

32. There was never any agreement between Plaintiff and Defendant that the $1,050 would cover Plaintiff's overtime work. Nor could there have been such an agreement, as Plaintiff was a non-exempt employee entitled to overtime even if he was salaried. Plaintiff's position as a machine operator failed to meet both the FLSA's and New Jersey's qualifications for overtime exemption as Plaintiff was not in "a bona fide executive, administrative, professional, or outside sales" position. *See* N.J Admin. Code § 12:56-7.1.

33. At all relevant times, Plaintiff, FLSA Collective Plaintiffs, and Class Members were non-exempt employees and did not receive all overtime compensation due to improper payments at a fixed salary rate, regardless of overtime hours worked.

34. Defendant knowingly and willfully operated their business with a policy of not compensating Plaintiff, FLSA Collective Plaintiffs, and Class Members for their overtime hours in violation of the FLSA and the NJSWHL.

35. Defendant knew that Plaintiff worked overtime hours as Defendant were the ones to require such work. Defendant knew that despite requiring such work they were not

compensating Plaintiff at all for this work. Further, Defendant knew that Plaintiff worked over forty (40) hours per week, as Defendant were the ones to create such schedules. Defendant therefore knew that any failure to pay wages would also include the failure to pay overtime wages.

***Plaintiff's and Class Members' Wage Statement and Notice Claims***:

36. Defendant never provided Plaintiff and Class Members with wage notices at hiring, as required by N.J.S.A. § 34:11-4.6 and New York Lab. Law § 195(1).

37. Plaintiff and Class Members likewise did not receive proper wage statements from Defendant, as required under NJSWHL and NYLL. The checks and/or cash payments that were disbursed to Plaintiff and Class Members were accompanied by nothing more than the amount paid to Plaintiff, the form of payment, and the week the payment was for. The payments do not include any information related to regular and overtime rates of pay, regular and overtime hours worked, gross wages, deductions, allowances, and net wages as required by N.J.S.A. § 34:11-4.6 and New York Lab. Law § 195(3).

38. Therefore, Defendant directly violated the N.J.S.A. § 34:11-4.6 and the Wage Theft Protection Act ("WTPA") – incorporated in the NYLL – when Defendant knowingly and willfully operated their business with a policy of not providing wage notices and proper wage statements to Plaintiff and Class Members.

39. In failing to provide proper wage statements and notices, Defendant has failed to comply with the law in a manner that clearly entails a concrete harm to an interest identified by the New Jersey and New York State legislature. As one Court observed:

> Here, Plaintiffs allege that Defendants failed to furnish them with proper wage notices and statements, as required by NYLL §§ 195(1) and 195(3). These provisions were enacted as part of New York's Wage Theft Prevention Act ("WTPA"), N.Y. Lab. Law § 195, which sought "to expand the rights of employees to seek civil and criminal avenues of remedy for their employers failing to follow labor law appropriately and the specifications therein." N.Y. Spons. Mem., 2010

> S.B. 8380. More specifically, the New York State Assembly passed the WTPA to address studies showing that a large number of employees were not being paid the wages owed to them, and that many employers were not adequately informing their employees of their wages and how they are calculated in language the employees could understand. *Id.* The New York State Assembly opined that existing penalties did not adequately deter employers from paying less than the wages owed, and stated that the WTPA would dramatically change this by increasing penalties for violating employees' rights. *Id.*

*Imbarrato v. Banta Mgmt. Servs.*, 2020 U.S. Dist. LEXIS 49740, *21-22 (S.D.N.Y. March 20, 2020)

40. Had Defendant provided Plaintiff and Class Members with wage statements containing a detailed breakdown of Plaintiff's regular and overtime hours and listing Plaintiff's regular and overtime rates, as required under N.J.S.A. § 34:11-4.6 and NYLL § 195(3), it would have been self-evident that Plaintiff was being underpaid.

41. Faced with this undeniable proof of their unlawful wage practices, Defendant would have had to either (a) increase Plaintiff's wages to the legally required amount or (b) forthrightly acknowledge, by way of the wage statement, that Plaintiff was underpaid, which would readily inculpate Defendant in court. Either possibility would have allowed Plaintiff to more effectively vindicate his rights under the NYLL. The deprivation of these possibilities therefore constitutes an injury.

42. The failure to provide proper wage notices and wage statements continues to result in delayed payment of all proper wages owed to Plaintiff and Class Members. This delayed payment caused Plaintiff and Class members to struggle to pay bills and other debts.

43. Defendant knowingly and willfully operated their business with a policy of not providing proper wage notices and wage statements as required by NYLL.

44. Because Defendant did not produce proper wage statements containing the actual wages to which Plaintiff was entitled (and the proper deductions), Defendant could not report to the IRS and Social Security Administration, through proper W-2s, Plaintiff's proper earnings for

11

the year, as such information is derived from the information on employees' wage statements. *See Mills v. Mills*, 2021 Minn. Dist. LEXIS 200, *5 (Minn. Dist. Ct., Anoka County, Tenth Judicial District May 20, 2021) ("Petitioner's gross annual income, based on her 2020 W-21 and paystub dated 12/24/20, is $130,321.30"); *T.F. v. N.F.*, 820 N.Y.S.2d 846, 846 (Sup. Ct., Suffolk Cty., June 22, 2006) ("In 2005 the plaintiff earned $ 133,086 as reflected on his final year paystub and W-2").[1]

45.    The effect of not reporting or underreporting wages on an employees' W-2 was, in turn, to reduce the amount of social security benefits available to the employee, as an employee's entitlement to benefits reflects how much money he or she is reported as having contributed to the social security system. *See McGauran v. Soc. Sec. Comm'n*, 2001 U.S. Dist. LEXIS 3187, *7 (N.D. Cal. March 19, 2001) ("Social security benefits are based upon the worker's earnings as reported to the [SSA] . . . [and] the worker's earnings are used to determine insured status for entitlement to retirement and to calculate cash benefit rates." (quoting Social Security Administration, Handbook § 1400 (1997)); *Coward v. Zurich Am. Ins. Co.*, 2011 U.S. Dist. LEXIS 74543, *3 (N.D. Ill. July 8, 2011) ("Under the Social Security statute, entitlement depends on 'the total of the wages paid . . . to an individual in a calendar year.'") (quoting 42 U.S.C. § 413(a)(2)(A)(ii)).

46.    "In the wake of the Supreme Court's decision in *TransUnion*, courts in this Circuit have held that plaintiffs lack standing to bring wage notice and statement claims under the NYLL

---

[1] It is true that the wages reported on W-2 forms are not always precisely identical to those listed on an employees' last paystub for the year. One reason for is, as the IRS explains, that "W-2 wages include: (i) the total amount of wages as defined in section 3401(a); (ii) the total amount of elective deferrals (within the meaning of section 402(g)(3)); (iii) the compensation deferred under section 457; and (iv) the amount of designated Roth contributions (as defined in section 402A)." https://www.irs.gov/pub/irs-drop/rp-19-11.pdf. However, the possibility, that wages listed on a W-2 might be affected by such considerations does not change the fact that the base wages on the W-2 are derived from paystubs. The paystub processing service *realcheckstubs* explains: "A pay stub contains crucial information that assists in calculating W2 wages. Paystub provides gross wages, deductions, taxes withheld, and other income-related data. Individuals gather the necessary figures required for accurate W2 calculation by referring to the pay stub." https://www.realcheckstubs.com/blog/paystubs/6-steps-how-to-calculate-w-2-wages-from-paystub.

12

absent any concrete, downstream consequences of the recordkeeping violation." *Chen v. Lilis 200 W. 57th Corp.*, No, 2023 U.S. Dist. LEXIS 38163, at 18, 2023 WL 2388728, at *8 (S.D.N.Y. Mar. 7, 2023). "On the other hand, 'allegations' that go 'beyond asserting a bare statutory violation and sufficiently allege concrete harm' resulting from 'the underpayment of wages' pass muster because 'monetary injury is a concrete harm sufficient for purposes of Article III standing.'" *Thompson v. Elev8 Ctr. N.Y.*, LLC, 2023 U.S. Dist. LEXIS 122504, *21 (S.D.N.Y. July 17, 2023) (quoting *Mateer v. Peloton Interactive, Inc.*, 2022 U.S. Dist. LEXIS 125017, at *4 2022 WL 2751871, at *2 (S.D.N.Y. July 14, 2022)).

47. Here, it is clear that Defendant's failure to provide Plaintiff and Class Members with proper wage statements entailed "concrete, downstream consequences" involving monetary injury, because the direct effect was to reduce Plaintiff and Class Members' entitlement to social security.

48. Courts agree that the misreporting of earnings constitutes a concrete injury cognizable under Article III:

> The Seventh Circuit in *Calderon* squarely addressed FICA standing. The plaintiffs in *Calderon* were former employees alleging the employer failed to pay their FICA taxes. 999 F.2d at 1105-06. The Seventh Circuit found that the plaintiffs lacked standing to compel the employer to pay their FICA taxes because "[b]enefits do not. . . depend on whether the employer actually paid the taxes." *Id*. at 1106. Plaintiffs could, however, enforce FICA's reporting requirement because it is the reporting of income that triggers benefits, and losing benefits is an injury under *Lujan*. *Id*. Whether the employer in *Calderon* made FICA payments on the plaintiffs' behalf had no bearing on the plaintiffs' entitlement to benefits. *Id*. "[T]he plaintiff's real interest lies in ensuring that the [employer] make the proper reports of their income." *Id*.

*Coward*, 2011 U.S. Dist. LEXIS 74543, at *3-4.

49. The case at bar is somewhat different from *Coward* inasmuch as Defendant actually underpaid Plaintiff and other employees, rather than merely misreporting their income. But this

13

distinction has no bearing on the question of Article III standing, since it is still the case that "it is the reporting of income that triggers benefits, and losing benefits is an injury." *Id*. Plaintiff and Class Members lost benefits by virtue of how Defendant reported, or failed to report, their income, which was in turn caused by the absence of legally compliant wage statements. That is why "Plaintiff[] [has] standing to enforce the statutory reporting requirements" imposed by the WTPA. *Calderon v. Witvoet*, 999 F.2d 1101, 1106 (7th Cir. 1993).

50. Whether or not any Class Members are presently eligible for social security benefits is legally immaterial. *See id*. ("Although only citizens and aliens residing in the United States may receive benefits, 42 U.S.C. § 402(t), plaintiffs may eventually fulfill this requirement and therefore are entitled to keep their Social Security accounts accurate.").

51. Because "[u]nder the Social Security statute, entitlement depends on 'the total of the wages paid . . . to an individual in a calendar year,'" Plaintiff was irreversibly injured with respect to his social security benefits as soon as Defendant sent either failed to send a W-2 to the IRS or sent a W-2 that underreported Plaintiff's true earnings. *Coward*, 2011 U.S. Dist. LEXIS 74543, at *3 (N.D. Ill. July 8, 2011) (quoting 42 U.S.C. § 413(a)(2)(A)(ii)). In either case, this was the result of Defendant's failure to issue legally compliant wage statements.

## STATEMENT OF CLAIM

### COUNT I

### VIOLATION OF THE FAIR LABOR STANDARDS ACT

52. Plaintiff realleges and incorporates all the foregoing paragraphs of this Complaint as if fully set forth herein.

53. At all relevant times, Defendant was and continue to be employers engaged in the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and

207(a). Further, Plaintiff is a covered individual within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

54. At all relevant times, Defendant employed Plaintiff and FLSA Collective Plaintiffs within the meaning of the FLSA.

55. At all relevant times, Defendant had gross annual revenues in excess of $500,000.

56. At all relevant times, Defendant had a policy and practice that failed to provide overtime compensation to Plaintiff and FLSA Collective Plaintiffs for all overtime hours of work, in violation of the FLSA.

57. Records, if any, concerning the number of hours worked by Plaintiff and FLSA Collective Plaintiffs should be in the possession and custody of Defendant. Plaintiff and FLSA Collective Plaintiffs intend to obtain these records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will then seek leave of Court to amend this Complaint to set forth the precise amount due.

58. Defendant knew of and/or showed a willful disregard for the provisions of the FLSA as evidenced by their failure to compensate Plaintiff and FLSA Collective Plaintiffs for all hours worked, including overtime hours, when Defendant knew or should have known such was due.

59. Defendant failed to properly disclose or apprise Plaintiff and FLSA Collective Plaintiffs of their rights under the FLSA.

60. As a direct and proximate result of Defendant's willful disregard of the FLSA, Plaintiff and FLSA Collective Plaintiffs is entitled to liquidated (i.e., double) damages pursuant to the FLSA.

61. Due to the intentional, willful and unlawful acts of Defendant, Plaintiff and FLSA Collective Plaintiffs suffered damages in an amount not presently ascertainable of unpaid wages including unpaid overtime wages, plus an equal amount as liquidated damages.

62. Plaintiff and FLSA Collective Plaintiffs is entitled to an award of their reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 216(b).

## COUNT II

## VIOLATION OF THE NEW JERSEY STATE WAGE AND HOUR LAW

63. Plaintiff realleges and incorporates all the foregoing paragraphs of this Complaint as if fully set forth herein.

64. At all relevant times, Plaintiff and New Jersey Class Members were employed by Defendant within the meaning of the NJSWHL, N.J.S.A 34:11-4.1 *et seq.*

65. Defendant knowingly and willfully failed to pay Plaintiff and New Jersey Class Members proper wages, including overtime, due to a failure to compensate overtime for overtime hours of work in violation of the NJSWHL.

66. Due to Defendant's NJSWHL violations, Plaintiff and New Jersey Class Members are entitled to recover from Defendant unpaid wages, unpaid overtime wages, reasonable attorneys' fees, liquidated damages, statutory penalties and costs and disbursements of the action, pursuant to the NJSWHL .

## COUNT III

## VIOLATION OF NEW YORK LABOR LAW

**(brough on behalf of a Rule 23 Class)**

67. Plaintiff realleges all the foregoing allegations in this Complaint as if fully set forth herein.

68. At all relevant times, New York Class Members were employed by Defendant within the meaning of the New York Labor Law §§ 2 and 651.

69. Defendant knowingly and willfully violated New York and Class Members' rights by failing to pay wages, including overtime wages, for all hours worked. This failure included a failure to compensate all hours excess of forty (40) per workweek at the proper overtime rate that is an extra 1/2 of the regular rate.

70. Defendant knowingly and willfully failed to pay New York Class Members proper wages, including overtime wages, due to timeshaving in violation of the NYLL.

71. Defendant knowingly and willfully failed to pay New York Class Members on a timely basis in violation of the NYLL.

72. Defendant knowingly and willfully failed to provide New York Class Members with proper wage and hour notices as required under the NYLL.

73. Defendant knowingly and willfully failed to provide New York Class Members with proper wage statements as required under the NYLL.

74. Due to Defendant's NYLL violations, New York Class Members are entitled to recover from Defendant, unpaid wages, including overtime, due to timeshaving, reasonable attorneys' fees, liquidated damages, statutory penalties and costs and disbursements of the action, pursuant to the NYLL.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself, the FLSA Collective Plaintiffs, and Class Members, respectfully request that this Court grant the following relief:

a. A declaratory judgment that the practices complained of herein are unlawful under the FLSA the NYLL, and NJSWHL;

    b. An injunction against Defendant and its officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

    c. An award of unpaid wages, including overtime, due under the FLSA, the NYLL and the NJSWHL;

    d. An award of liquidated damages as a result of Defendant's willful failure to pay wages pursuant to the FLSA, NYLL, and NJSWHL;

    e. An award of pre-judgment and post-judgment interests, costs and expenses of this action together with reasonable attorneys' and expert fees and statutory penalties;

    f. Designation of Plaintiff as Representative of the FLSA Collective Plaintiffs;

    g. Designation of the action as a class action pursuant to F.R.C.P 23;

    h. Designation of Plaintiff as Representative of the Class;

    i. Designation of Plaintiff's Counsel as Class Counsel; and

    j. Such other relief as this Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demand trial by jury on all issues so triable as of right by jury.

Dated: June 25, 2024                          Respectfully submitted,

                                                **LEE LITIGATION GROUP, PLLC**

                                                By:   */s/ C.K. Lee*
                                                       C.K. Lee, Esq. (CL 4086)
                                                       148 West 24th Street, 8th Floor
                                                       New York, NY 10011
                                                       Tel.: (212) 465-1180
                                                       Fax: (212) 465-1181
                                                       *Attorneys for Plaintiff, FLSA*
                                                       *Collective Plaintiffs, and the Class*